UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Deborah Parker | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Brian Dunn | Kevin Gilbert |

**Proceedings:** ZOOM HEARING RE: MOTION FOR JUDGMENT AS A MATTER OF LAW (Dkt. 165, filed on October 25, 2024)

## I. INTRODUCTION AND BACKGROUND

On June 16, 2019, plaintiff Paulette Smith ("plaintiff" or "Smith"), individually and as successor in interest to decedent Albert Dorsey ("Dorsey" or "decedent"), filed a complaint against defendants Officer Edward Agdeppa ("defendant" or "Agdeppa") and the City of Los Angeles ("City"). Dkt. 1 ("Compl."). In her complaint, Smith alleged four claims for relief: (1) violations of 42 U.S.C. § 1983 ("Section 1983") against Officer Agdeppa based on alleged unreasonable use of deadly force; (2) violations of Section 1983 based on an unconstitutional policy, practice or custom against the City; (3) wrongful death against Agdeppa and the City based on alleged battery, pursuant to Cal. Gov't Code §§ 815.2(a), 820(a) and Cal. Civ. Code § 43; and (4) wrongful death against Agdeppa and the City based on alleged negligence, pursuant to Cal. Gov't Code §§ 815.2(a), 820(a). See Compl.

On May 6, 2020, the parties stipulated to dismiss the City from the case, leaving claims one, three and four as alleged against Agdeppa. See Dkts. 30, 31.

On June 30, 2020, Agdeppa, now the sole defendant, filed a motion for summary judgment, or, in the alternative, partial summary judgment on each of plaintiff's claims. Dkt. 37. On November 6, 2020, the Court denied the motion. Dkt. 59 ("MSJ Order").

Specifically, the Court denied summary judgment on plaintiff's Section 1983 claim because (1) "there is a genuine dispute over whether plaintiff posed an immediate threat to the officers sufficient to warrant the use of deadly force"; and (2) "Agdeppa is not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

entitled to qualified immunity as a matter of law" because a jury could find that Agdeppa's use of deadly force violated clearly established law. Id. 16, 18. The Court also denied summary judgment as to plaintiff's claims for wrongful death based on battery and negligence, respectively, because the Court had "already concluded that there is an issue of disputed fact regarding [defendant's] use of deadly force." Id. at 19.

On November 25, 2020, Agdeppa appealed the Court's denial of his motion for summary judgment on the basis of qualified immunity to the Ninth Circuit. Dkt. 62.

On December 30, 2022, the Ninth Circuit panel, consisting of Judge Morgan Christen, Judge Daniel A. Bress, and District Judge Gary Feinerman (sitting by designation), issued an opinion affirming the Court's denial of Agdeppa's motion, with Judge Bress dissenting. Dkt. 75.

On May 4, 2023, the Ninth Circuit issued an order notifying the parties that Judge Feinerman had resigned from judicial service and Judge Consuelo M. Callahan had been drawn as a replacement judge. Dkt. 78. The new panel then voted sua sponte to grant panel rehearing, with "Judge Callahan and Judge Bress vot[ing] in favor of rehearing, and Judge Christen vot[ing] against rehearing." Id. The original opinion and dissent were accordingly withdrawn. Id.

On August 30, 2023, the new Ninth Circuit panel issued an opinion "revers[ing] the district court's decision denying Agdeppa qualified immunity and remand[ing] for proceedings consistent with [its] opinion." Dkt. 80 ("Opinion"). On March 11, 2024, the Ninth Circuit issued its mandate. Dkt. 82. Defendant was thus entitled to summary judgment as to plaintiff's Section 1983 claim based on qualified immunity. Dkt. 89. Plaintiff's remaining claims against Agdeppa are state law claims for (1) wrongful death based on battery; and (2) wrongful death based on negligence. See Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1171 (9th Cir. 2013) ("[T]he doctrine of qualified immunity does not shield defendants from state law claims.").

On April 26, 2024, defendant filed a motion for reconsideration of the Court's order on defendant's motion for summary judgment. Dkt. 85. On June 24, 2024, the Court denied defendant's motion for reconsideration. Dkt. 89.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

On August 9, 2024, defendant filed six motions *in limine*. Dkts. 91-96. On August 12, 2024, plaintiff filed three motions *in limine*. Dkts. 98-100. On September 9, 2024, the Court issued an order on the nine motions *in limine*. Dkt. 120.

The Court held a jury trial from September 17, 2024, through September 25, 2024. On September 25, 2024, after extensive deliberations, the jury reported that it was unable to reach a verdict, and after consultation with counsel, the Court declared a mistrial. Dkt. 162.

On October 25, 2024, Agdeppa filed a motion for judgment as a matter of law. Dkt. 165 ("Mot."). On November 25, 2024, Smith filed her opposition. Dkt. 168 ("Opp."). On December 9, 2024, Agdeppa filed his reply. Dkt. 170 ("Reply").

On January 6, 2025, the Court held a hearing. Having carefully reviewed the trial record and considered the parties' arguments and submissions, flagging the relevant disputed facts in Section III below, the Court finds and concludes as follows.

## II. LEGAL STANDARD

Judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. . . ." Fed. R. Civ. P. 50(a)(1); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 139, 149 (2000). If the court does not grant a motion for judgment as a matter of law pursuant to Rule 50(a), a party may file a renewed motion for judgment as a matter of law after the trial. Fed. R. Civ. P. 50(b). It is well-settled that the standard for judgment as a matter of law is the same as the standard for summary judgment. Reeves, 530 U.S. at 150 (citing Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 250-52 (1986)).

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997); see also Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994) (articulating the same standard in the context of a directed verdict). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

In a motion for summary judgment, a court must review the record "taken as a whole." Matsushita, 475 U.S. at 587. Similarly, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. Reeves, 530 U.S. at 150. In so doing, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Id. (citations omitted); see also Berry, 39 F.3d at 1057. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 447 U.S. at 255. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Reeves, 530 U.S. at 151 (citing 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2529 at 299 (2d ed. 1995)). In other words, the court should give credence to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                               **'O'**

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Reeves, 530 U.S. at 151 (citing Wright & Miller, supra, at 300).

### III.   DISCUSSION

Agdeppa notes that the claims for both battery and negligence are premised on the use of unreasonable use of force, and thus discusses the two claims jointly. Mot. at 8-9. Agdeppa argues that the evidence presented at trial "absolutely refutes" the allegation that the use of force was unreasonable and confirms "that the use of force was objectively reasonable and undertaken only in response to Dorsey's imminent threat." Id. at 9. According to Agdeppa, Dorsey's "clear resistance" in response to directives from Agdeppa and Officer Perla Rodriguez ("Rodriguez")[1] (collectively "the Officers") and their attempts to arrest him "unquestionably posed an imminent threat to Rodriguez's life," thus there can be no dispute that Agdeppa's actions were objectively reasonable. Id.

Agdeppa argues that he is entitled to judgment as a matter of law because Dorsey "posed an imminent threat to both Officers and … lethal force was both reasonable and necessary to protect against Dorsey's violent and uncontrolled attack." Id. Agdeppa points to Judicial Council of California Civil Jury Instruction No. ("CACI") 441, which was given at trial as Instruction 27 and CACI 1305, given at trial as Instruction 26, for the proposition that "the critical issue is whether Agdeppa's 'use of deadly force was not necessary to defend human life,'" and whether the use of force was reasonable. Id. Agdeppa argues that CACI 441 deems an officer's use of force necessary only if, given the totality of the circumstances, a reasonable officer in the same situation would have believed that "'deadly force was necessary to defend against an imminent threat of death or serious bodily injury.'" Id. (quoting CACI 441). Agdeppa contends that CACI 1305 reflects the same inquiry, looking at "'the amount of force that would have appeared reasonable to an officer in defendant's position under the same or similar circumstances.'" Id. (quoting CACI 1305). Agdeppa argues that California courts have confirmed that the instant battery and negligence claims rely on the same reasonableness

---

[1] Officer Rodriguez has since changed her name to Perla Aceves. The Court uses Rodriguez, as the parties do, for the sake of clarity.

Case 2:19-cv-05370-CAS-JC   Document 172   Filed 01/06/25   Page 6 of 17   Page ID #:2149

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

analysis. Id. Penal Code section 196, defining justified homicide by a peace officer, Agdeppa contends, confirms that "aside from the tactical consideration under the negligence claim … there is no difference in the evaluation of [p]laintiff's battery or negligence claims." Id. at 10.

Agdeppa argues that the battery and negligence claims pursuant to California law mirror the federal analysis of excessive force established in Graham v. Connor, 490 U.S. 386 (1989), with the exception that California law permits pre-shooting tactics to be considered as a part of the totality of the circumstances for the two remaining claims. Id. at 11. Based on Graham, Agdeppa argues "the critical issues for determination for both claims are whether Dorsey was actively resisting arrest, whether Dorsey posed an imminent threat, and ultimately whether Agdeppa's actions were objectively reasonable." Id.

First, Agdeppa argues that there is "no question whatsoever that Dorsey resisted arrest," detailing the interaction between Dorsey and the Officers prior to the shooting. Id. at 11-12. Agdeppa contends that "Dorsey never once complied with any of the Officers' lawful directives," that he resisted when the Officers attempted to handcuff him, that he continued resisting when told that if he did not comply they would use their tasers, and that he "increase[ed] his attack by delivering further punches and strikes" after being tased. Id. Agdeppa alleges that Dorsey knocked Agdeppa into the wall, dazing him. Id. at 12. While Agdeppa was dazed, he claims, Dorsey began hitting Rodriguez, knocking her to the ground and causing her to lose her taser, which he then retrieved and "began tasing her while simultaneously punching and beating her in the head …." Id. (citing dkt. 166 ("Transcript Day 2") at 39:10-15). Agdeppa claims that he regained awareness, saw this scene, and "[b]elieving that the next punch from Dorsey would kill [Rodriguez], Agdeppa yelled something and fired five shots at Dorsey within roughly 1.5 seconds to stop his brutal attack." Id. Agdeppa argues that plaintiff presented no evidence to refute the facts at issue and that plaintiff's attempts to cast doubt on the Officers' credibility was based on "mere speculation" that Dorsey was not presenting an imminent threat. Id.

Second, according to Agdeppa, plaintiff offered no evidence to refute the notion that Dorsey posed an imminent threat to officers. Id. The fact that plaintiff tried to cast doubt on the injuries the Officers suffered, Agdeppa argues is "irrelevant to whether Dorsey posed an imminent threat" because neither California nor federal law requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

injury before lethal force can be used in the defense of life. Id. at 13. Agdeppa argues that nothing in CACI 441 requires proof of a certain quantum of injury to justify the use of deadly force and that California law only requires imminent threat of death or serious bodily injury. This, Agdeppa argues, is a question of whether, based on the totality of the circumstances, "'a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.'" Id. (quoting Penal Code § 835a(e)(2)). Agdeppa argues that he believed that Dorsey had Rodriguez cornered and that he "would kill her with his next blow," which qualifies as an imminent threat. Id. at 14. Agdeppa contends that plaintiff presented no evidence from any other reasonable officer facing the same situation to refute the Officers' testimony, which is required for plaintiff's claims. Id. Third, Agdeppa argues that his actions were objectively reasonable given Dorsey's resistance and the fact that he posed an imminent threat to Rodriguez's life. Id. Agdeppa contends that plaintiff offered no evidence to demonstrate what a reasonable officer would have done differently. Id. at 15. Here, Agdeppa argues, he had been dazed by Dorsey's hit and "had little time to decide what to do" when he regained awareness and saw his partner being attacked by Dorsey. Id. It was objectively reasonable, he argues, to respond as he did in these circumstances: "yelling something to the effect of 'stop' before firing 5 shots within 1.5 seconds to confront the threat that Dorsey posed." Id.

Next, Agdeppa argues that pre-shooting tactical conduct can be considered as a part of the totality of the circumstances pursuant to California law, but cannot give rise to an independent claim for negligence. Id. Even assuming that the Officers were negligent in their pre-shooting conduct, Agdeppa argues, they would still be entitled to discretionary immunity for their tactical decisions and thus "any alleged tactical negligence by the officers is a non-issue." Id. Agdeppa argues that pursuant to Hayes v. County of San Diego, plaintiff must prove a causal connection between the pre-shooting tactical conduct and the ultimate harm. Id. at 17 (citing 57 Cal. 4th 622 (2013)). Agdeppa contends that plaintiff presented no such evidence and did not show what a reasonable officer in his position would have done differently. Id. Agdeppa argues that even if the pre-shooting decisions could be independently negligent, "police officers are vested with discretion with respect to their decision to detain an individual they believe may have violated the law in their presence." Id. at 17-18. An officer's tactical decisions, Agdeppa contends, are also entitled to discretionary immunity pursuant to Government Code section 820.2. Id. at 18. Agdeppa argues that the decisions the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

Officers made regarding how to approach Dorsey and whether to detain him for certain penal code violations are entirely discretionary and entitled to immunity. Id. at 18-19.

In opposition, plaintiff argues that Agdeppa, in his motion, ignores the evidence presented by plaintiff, which must be viewed in the light most favorable to plaintiff as the non-movant on a motion for judgment as a matter of law. Opp. at 3. Plaintiff contends that it is undisputed that Agdeppa fired in defense of Rodriguez. Id. Agdeppa testified, plaintiff argues, that he had been trained that "deadly force may only be used if he was confronted with a situation involving an imminent threat of death or serious bodily injury." Id. According to plaintiff, Agdeppa acknowledged the text of the Los Angeles Police Department ("LAPD") training bulletin which detailed the kind of serious bodily injury that would warrant the use of lethal force, listing "'loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement.'" Id. at 3-4. Plaintiff argues that Exhibit 116-16, which she presented at trial, is a photo of Officer Rodriguez "depict[ing] no discernable injuries to any part of Officer Rodriguez's face," and that Rodriguez confirmed that she suffered no serious bodily injuries and that she did not miss any work. Id. at 4. Plaintiff contends that Agdeppa confirmed at trial that Rodriguez suffered no serious bodily injuries and that he also did not suffer any serious bodily injury. Id. at 4-5. The fact that neither of the Officers suffered any serious injuries, plaintiff contends, is sufficient to demonstrate a genuine dispute of fact for the purposes of a Rule 50 motion "as the officers' reports of being viciously pummeled by Dorsey, a 250 pound man, are flatly contradicted by the fact that neither officer suffered any injuries consistent with any kind of a severe beating." Id. at 5.

Plaintiff argues that Agdeppa's claim that Dorsey struck Rodriguez with a taser is contradicted by Agdeppa's trial testimony, and thus this claim cannot support judgment as a matter of law in Agdeppa's favor. Id. at 5-6. Plaintiff also argues that the Officer's body worn camera footage creates a dispute of material fact because it shows pre-shooting tactical negligence on behalf of the Officers consisting of "impatient demeanor, impatient and harsh tonality, aggressive use of profanity," and escalation of the situation without call for backup. Id. at 6. Plaintiff argues that this behavior was "a substantial departure from tactical training favoring deescalation." Id.

Finally, plaintiff argues that the fact that Agdeppa's motion for summary judgment and motion for reconsideration were denied demonstrates that the instant motion should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

also be denied because there are issues of fact properly resolved by a jury in this case. Id. at 6-7.

In reply, Agdeppa first argues that plaintiff concedes that "the use of lethal force on Dorsey was 'in defense of the life of Agdeppa's partner.'" Reply at 1 (quoting Opp. at 3). Agdeppa argues that plaintiff's arguments about severity of injury and about second guessing discretionary decisions "that had no causal relationship to the ultimate use of force" are irrelevant distractions. Id. Agdeppa contends that in her opposition, plaintiff never argues that Agdeppa's use of force was unreasonable or excessive. Id. Agdeppa argues that the Officers were not required to wait until they had suffered serious injury because the threat of such injury is all that is required by law to permit the use of force. Id. at 2. Agdeppa argues that because plaintiff did not respond to whether Dorsey presented an imminent threat and whether the Officers' use of force was objectively reasonable, plaintiff should be considered to have conceded these issues. Id.

Agdeppa reiterates his argument that his use of force was reasonable given the totality of the circumstances, and contends that pre-shooting conduct needs only to be in the range of reasonableness, rather than be the most reasonable response. Id. at 3-4. Agdeppa again argues that the plaintiff is required to "show a causal link between the allegedly negligent pre-shooting tactics and the ultimate use of force in order to support the existence of any negligence liability." Id. at 4. Agdeppa contends that plaintiff's alternatives to how the Officers handled the situation do not suffice because she has not offered evidence in the form of expert testimony, legal standards, or caselaw, that the Officers acted improperly and "contributed to Dorsey's assault of the Officers." Id. at 5. Agdeppa argues that even if there was such a legal standard prohibiting the Officers from using the verbal directives they used, there is no causal link between Dorsey's noncompliance with these directives and his "eventual decision to attack the Officers." Id.

Agdeppa argues that plaintiff's arguments conflict with precedent established in Brown v. Ransweiler, 171 Cal. App. 4th 516, 528 (2009), which deems an officer's use of lethal force reasonable if the officer has probable cause to believe there is a significant threat of death or serious injury to the officer or others. Id. at 6. Here, Agdeppa argues, it was reasonable for the offers to conclude that Dorsey posed an imminent threat. Id. at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

Agdeppa next argues that he is entitled to "several immunities, which prohibit [p]laintiff from arguing that any of the immunized decisions somehow constituted 'tactical negligence.'" Id. at 7. Agdeppa argues that plaintiff does not dispute that Government Code section 820.2 immunizes tactical decisions besides the use of unreasonable force, and that all decisions by the Officers here involved the exercise of discretion. Id. Agdeppa also argues that the Officers' tactical decisions are shielded by Government Code section 821.6 "which immunizes public employees from liability for an injury caused by the 'instituting or prosecuting any judicial or administrative proceeding … even if he acts maliciously or without probable cause.'" Id. at 7. Agdeppa contends that because the undisputed evidence is that the Officers' actions were reasonable, Government Code section 820.4 also provides immunity. Id. Agdeppa argues that these immunities suffice for judgment as a matter of law to be granted, but that Agdeppa is also entitled to immunity pursuant to Government Code section 845.8, which provides immunity when injury is caused by a person resisting arrest. Id. Agdeppa also argues that pursuant to Penal Code section 196, homicide by a peace officer is justified when "'the homicide results from a peace officer's use of force that is in compliance with Penal Code Section 835a,'" which allows use of deadly force to defend against imminent threat of serious bodily injury. Id. at 7-8. Because there is no dispute that Dorsey was posing an imminent threat and that Agdeppa acted in an objectively reasonable manner, Agdeppa argues, all of these immunities are applicable. Id. at 9.

The Court concludes that judgment as a matter of law is not appropriate in this case. The Court agrees with Agdeppa that both the battery and negligence claims are predicated on whether the use of force was reasonable, and thus the Court treats the analysis jointly, as Agdeppa does in his motion. Mot. at 8-9; CACI 1305B; CACI 441.

First, based on the evidence presented at trial, the Court finds that whether Dorsey posed an imminent threat and whether Agdeppa's use of force in response to Dorsey was objectively reasonable is disputed.[2] In order to state a claim for battery or negligence

---

[2] The Court analyzes the imminence of the threat posed by Dorsey and the reasonableness of force used by the Officers in response together because the question of whether the force used was reasonable is dependent upon the imminence of the threat the Officers faced. See CACI 1305B; CACI 441. At oral argument, counsel for Agdeppa suggested that the Ninth Circuit had made factual findings that were binding on this Court with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

based on a police officer's use of deadly force pursuant to California law, one element a plaintiff must prove is that the "use of deadly force was not necessary to defend human life." CACI 1305B; CACI 441. The use of such force is necessary "only if a reasonable officer in the same situation would have believed, based on the totality of the circumstances known to or perceived by [him] at the time, that deadly force was necessary." Id. The touchstone pursuant to California law for both claims is reasonableness, as California courts have "long recognized that peace officers have a duty to act reasonably when using deadly force." Hayes, 57 Cal. 4th at 629.

Plaintiff contends that the assertion that Dorsey posed an imminent threat to the Officers and that Agdeppa's use of force was reasonable are contradicted by the lack of injury to either Officer. Opp. at 3-5. The Court agrees with Agdeppa that the proper inquiry is not whether injury to the Officers occurred, an assessment made with the benefit of hindsight, but whether the Officers reasonably perceived an imminent threat from Dorsey and responded to any threat with objectively reasonable force. Hayes, 57 Cal. 4th at 632 (citing Graham, 490 U.S. at 396). However, the Court concludes that the Officers' lack of injury creates a dispute of fact as to how the events to which Officers Agdeppa and Rodriguez testified unfolded. Plaintiff argues that the lack of injury to either Officer "is sufficient to demonstrate genuine factual disputes for Rule 50 purposes, as the [O]fficers' reports of being viciously pummeled by Dorsey, a 250 pound man, are flatly contradicted by the fact that neither officer suffered any injuries consistent with any kind of severe beating." Opp. at 5.

In the context of a motion for judgment as a matter of law, the Court is prohibited from making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000). Indeed, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe" while crediting evidence favoring the nonmovant and evidence favoring the movant that "is uncontradicted and unimpeached." Id. at 151. Plaintiff cites the post-incident photograph of Rodriguez "which depicted no discernable injuries to any part of [her] face," as well as her testimony that she did not break any bones, suffer any injury consistent with skill facture, and did not miss work as a result of her injury. Dkt. 169,

regard to the imminence of the threat posed by Dorsey. To the contrary, the Ninth Circuit analyzed the facts in assessing the legal question of whether qualified immunity applied and expressly stated that it did "not resolve any factual disputes ...." Dkt. 79 at 18.

Case 2:19-cv-05370-CAS-JC   Document 172   Filed 01/06/25   Page 12 of 17   Page ID #:2155

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

Exh. 116-6; Transcript Day 2 at 65:2, 126:8-10, 126:12. Agdeppa also testified that Rodriguez did not suffer any life-threatening injuries and that he did not suffer any broken bones or miss work as a result of his injuries. Transcript Day 2 at 74:23-25, 126:8-127:3. The Court finds that the evidence submitted by plaintiff supporting lack of injury to the Officers, and to Rodriguez in particular, serves to create a dispute of fact with regard Agdeppa's testimony that he saw Dorsey pummeling Rodriguez and saw her head bouncing on the tile floor at the time he fired his weapon. Transcript Day 2 at 34:21-35:4.

The Court also concludes that Agdeppa's conflicting testimony regarding whether he saw a taser in Dorsey's hand creates a dispute of fact regarding the imminence of the threat posed by Dorsey and the reasonableness of the force Adgeppa used in response. Plaintiff points to Agdeppa's testimony on the first day of trial wherein he responded "'[n]o, sir'" both when he was asked, "'[d]id you ever see Mr. Dorsey obtain a Taser from Officer Rodriguez?'" and when he was asked, "'[a]t any time prior to the shooting, did you ever see Mr. Dorsey in possession of a Taser in his hand?'" Opp. at 5-6. On the second day of trial, during defense counsel's direct examination of Agdeppa, Agdeppa testified that he saw Dorsey obtain Rodriguez's taser and saw him point it at her head. Transcript Day 2 at 34:21-35:4. On cross examination, plaintiff's counsel asked Agdeppa whether he had mentioned Dorsey having the taser at any point during his post-incident statement, to which Adgeppa replied he could not recall whether he had. Transcript Day 2 at 51:25-52:5. In response to the same line of questioning, Agdeppa testified that he did not recall saying he had never seen a taser in Dorsey's hand during his testimony the day before. Id. at 52:6-11. Agdeppa also testified that he did not recall whether or not he had mentioned Dorsey obtaining the taser and pointing it at Rodriguez in his deposition testimony. Id. at 52:14-52:24. The Court finds that this testimony serves to create a dispute of fact as to whether Dorsey obtained Rodriguez's taser and whether he was pointing at Rodriguez's head, and creates an issue of credibility regarding the Officers' testimony about how the events prior to Agdeppa's shooting of Dorsey unfolded.

Additionally, the Court concludes that there is a dispute of fact as to whether pre-shooting tactical negligence led to an ultimately unreasonable use of force. Pre-shooting tactical negligence can be considered as part of the totality of circumstances pursuant to California law in assessing the reasonableness of the ultimate use of force, explained further below. At trial, plaintiff's counsel asked Agdeppa about the concept of tactical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

deescalation and his training in the area. Dkt. 135 ("Transcript Day 1")³ at 150:16-152:18. Plaintiff's counsel asked Agdeppa whether he was trained that as a police officer he could diffuse a situation by being patient, and whether in the past he had "been able to diffuse situations with people who are suffering from mental illness by spending as much as 30 minutes talking to them." Id. at 151:4-7. Plaintiff's counsel inquired about whether the deescalation training Agdeppa received would counsel against the use of profanity, to which Agdeppa replied that using profanity can be considered deescalation because it can prevent a situation from becoming more extreme. Id. at 154:21-15. Plaintiff's counsel asked Agdeppa whether the LAPD bulletin on what to do when a person is exhibiting bizarre behavior "said [to] avoid expressing anger [im]patience or irritation" and to avoid touching the person, to which Agdeppa replied it did. Id. at 157:11-19.

Plaintiff's counsel then played Agdeppa's and Rodriguez's body worn camera footage for the jury. Id. at 158:23-24; 162:16-17. Based on the video, plaintiff's counsel asked whether Agdeppa had told Dorsey he was losing his patience with him and whether he thought that would deescalate the situation. Id. at 164:4-8. Plaintiff's counsel and Agdeppa further discussed whether this was a proper deescalation technique. Id. at 164:23-165:8. Plaintiff's counsel flagged that Agdeppa could be heard on the body-worn camera asking Dorsey, who was undressed at the time "[a]re you going to get dressed or are we going to have to drag you out of here?" a question Agdeppa testified was intended as a deescalation technique. Id. at 166:14-20. Plaintiff's counsel noted that Agdeppa could be heard on the body-worn camera asking Dorsey "what is wrong with you?" and asked whether this was a deescalation tactic, to which Agdeppa replied it was not. Id. at 167:20-22. Plaintiff's counsel suggested that Dorsey's noncompliance was making Agdeppa angry. Id. at 171:3-8. Plaintiff's counsel asked whether the Officers called for backup at any point. Id. at 171:25-172:9. Plaintiff's counsel inquired as to whether Agdeppa saying "I swear to God, if you fucking tense up, buddy" was a deescalation technique, to which Agdeppa replied it was. Id. at 172:13-24. Plaintiff's counsel asked Agdeppa whether he was taught that "time … distance, and communication and access to

---

³ Though neither party submitted the transcript from the first day of trial as an exhibit in connection with this motion, the Court finds that it is properly the subject of judicial notice pursuant to Federal Rule of Evidence 201. Accordingly, the Court takes judicial notice of the transcript from the first day of trial on September 17, 2024, at docket 135, and relies on it here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

available resources are things [officers] should consider when considering how to diffuse a potentially volatile situation." Id. at 174:2-5. Plaintiff's counsel elicited testimony and certain admissions that are inconsistent with the claim of deescalation. The Court concludes that this testimony combined with the body worn camera footage is sufficient to create a dispute of fact as to whether the Officers were negligent with regard to the tactics they employed such that, looking to the totality of the circumstances, a jury could conclude that the ultimate use of deadly force was unreasonable.

Based on the lack of injury to the Officers, the contradictory testimony about Rodriguez's taser, and the argument that Officers' failure to deescalate the situation or call for backup before using deadly force amounted to tactical negligence, the Court concludes there is a genuine dispute of fact as to the imminence of the threat posed by Dorsey and the reasonableness of force the Officers used in response, such that judgment as a matter of law is inappropriate on this basis.

Agdeppa also argues that pursuant to California law, there is no independent claim for pre-shooting tactical negligence, and that pre-shooting negligence can only be considered as a part of the totality of circumstances considered in determining whether the ultimate use of force was reasonable. Mot. at 15. The Court agrees with this interpretation of California law, but finds that plaintiff is not attempting to assert a separate claim for pre-shooting negligence. Pursuant to Hayes, negligent tactical conduct by officers leading up to a use of force can be considered as a part of the totality of the circumstances in the assessment of the reasonableness of that force, but cannot be the basis for a separate negligence claim against the officers involved, so long as it does not give rise to separate injury. Hayes, 57 Cal. 4th at 631-32. Though plaintiff's counsel at the outset of trial, during a dispute regarding the statement of the case, stated that he did not "want to foreclose the preshooting tactical negligence claim," the later briefing plaintiff submitted with regard to disputed jury instructions demonstrates that plaintiff acquiesces in this interpretation of the law. Transcript Day 1 at 8:23-8:25; Letter Brief (not docketed). In her brief submitted to the Court during trial regarding jury instructions, plaintiff argued that the tactical conduct and decisions of law enforcement officers preceding the use of deadly force can give rise to negligence liability, "for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." Letter Brief at 1. Plaintiff does not therein argue that pre-shooting tactical conduct can be the basis for a separate claim for negligence, nor does plaintiff oppose defendant's interpretation of the law in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
| Title | Paulette Smith v. City of Los Angeles et al | | |

her opposition to the instant motion. <u>See generally</u> Letter Brief; Opp. Accordingly, the Court agrees that plaintiff cannot make a separate claim based on pre-shooting tactical negligence, but the Court finds that plaintiff is not attempting to do so in this case.

Agdeppa argues that he is entitled to immunity on several state law bases. The Court determines that judgment as a matter of law is not appropriate on the basis of any of these immunities.[4] In his motion, Agdeppa contends that he is entitled to discretionary immunity pursuant to Government Code section 820.2. Mot. at 18. This section says that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. In his reply, Agdeppa contends that "[p]laintiff does not dispute that Government Code section 820.2 immunizes a police officer's tactical decisions, except when using unreasonable force." Reply at 7. Accordingly, Agdeppa seemingly concedes that if the use of force is not reasonable, discretionary immunity pursuant to this section does not apply. The Court concludes that, as discussed above, a question of fact remains as to whether Agdeppa's use of force was reasonable, and thus the Court cannot grant judgment as a matter of law on the basis of Government Code section 820.2.

The Court reaches the same conclusion with regard to the additional immunities Agdeppa raises in reply (which have been raised previously in this action, though not raised in the instant motion). Agdeppa contends that he is entitled to immunity pursuant to Government Code section 820.4, which provides that "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." <u>Id.</u> at 7; Cal. Gov't Code § 820.4. Adgeppa argues that "since the undisputed evidence is that the Officers' actions were reasonable, the Officers are immune from liability under Government Code section 820.4." Reply at 7. Because the

---

[4] At oral argument, counsel for Agdeppa clarified that his argument was that the discretionary immunities cited immunized the Officers' pre-shooting tactical conduct from being considered as a part of the totality of the circumstances in determining whether the ultimate use of force was reasonable. The Court finds that this does not change its conclusion that the immunities are not applicable based on the record. The cited immunities either depend on the reasonableness of tactics used, a matter in dispute here, or are inapplicable based on the kind of claim at issue.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
| Title | Paulette Smith v. City of Los Angeles et al | | |

Court has concluded that the reasonableness of the Officers' actions is disputed, the Court finds that immunity pursuant to Government Code section 820.4 does not warrant judgment as a matter of law.

Agdeppa also argues that he is entitled to immunity pursuant to Penal Code sections 196 and 835a. Id. Penal Code section 196 provides that "[h]omicide is justifiable when committed by peace officers … [w]hen the homicide results from a peace officer's use of force that is in compliance with Section 835a." Penal Code § 196. Penal Code section 835a provides that deadly force may be used "[t]o defend against an imminent threat of death or serious bodily injury to the officer or to another person." Penal Code §835a. As discussed, the Court concludes that the imminence of the threat of death or serious bodily injury posed by Dorsey is a matter that remains in dispute. Accordingly, the Court finds that judgment as a matter of law is not appropriate on this basis.

Agdeppa argues that he is entitled to immunity pursuant to Government Code section 845.8. Reply at 7. This section provides that "[n]either a public entity nor a public employee is liable for … [a]ny injury caused by … [a] person resisting arrest." Cal. Gov't Code § 845.8. The Court finds that the applicability of this immunity is belied by the plain language of the statute. In this case, the injury to Dorsey was not "caused by" Dorsey, the "person resisting arrest." The injury here was caused by Agdeppa shooting Dorsey. In Estate of Garcia Toribio, the case relied upon by Agdeppa to support the applicability of this immunity, the court determined that Government Code section 845.8 applied when the undisputed facts showed that prior to the officer involved shooting, the decedent was acting erratically, was asked repeatedly by officers to drop a knife he had in his hand, refused to comply with this instruction, and instead emerged from the room toward the officers holding the knife, at which point one of the two officers shot the decedent. Est. of Garcia Toribio v. City of Santa Rosa, 381 F. Supp. 3d 1179, 1182-86 (N.D. Cal. 2019). The court there concluded that "two forms of state statutory immunity preclude the claims against an officer under these circumstances: immunity for all injuries caused by a person resisting arrest (Cal. Gov't Code § 845.8) and peace officer immunity for a killing that 'was necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty' (Cal. Penal Code § 196)." Id. at 1191. The court provides no citation or explanation for this interpretation of the statute. See generally id. The Court finds that even if this interpretation of the statute is correct, and an officer shooting a decedent who

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-cv-05370-CAS(JCx) | Date | January 6, 2025 |
|---|---|---|---|
| Title | Paulette Smith v. City of Los Angeles et al | | |

resists can be deemed an injury "caused by a person resisting arrest," the Court concludes that the circumstances in Estate of Toribio, wherein it was undisputed that the decedent came toward officers with a knife is distinct from the instant situation, wherein the extent of Dorsey's resistance is disputed. Therefore, the Court concludes that immunity giving rise to judgment as a matter of law is not appropriate here.

Finally, Agdeppa argues that he is immune from liability pursuant to Government Code section 821.6, which provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. While California courts have held that a police officer can be covered by this provision, the Supreme Court of California recently determined that "[i]n enacting section 821.6, the Legislature conferred absolute immunity against claims based on injuries caused by wrongful prosecutions, but not other types of injuries inflicted in the course of law enforcement investigations." Leon v. Cnty. of Riverside, 14 Cal. 5th 910, 918, 928 (2023). The claims at issue here are not claims of wrongful prosecution—plaintiff does not challenge that the Officers may have had cause to arrest Dorsey, rather she challenges the manner in which the Officers pursued this goal. The Court concludes that immunity pursuant to Government Code section 821.6 does not apply, and that judgment as a matter of law is also inappropriate on this basis.

## IV.  CONCLUSION

In accordance with the foregoing, the Court **DENIES** Agdeppa's motion for judgment as a matter of law.

IT IS SO ORDERED.

|  | 00 : 20 |
|---|---|
| Initials of Preparer | CMJ |